IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WESLEY C. BATTEN,

      Plaintiff,                         No. CIV S-08-2511 LKK EFB P

  vs.

SHASTA COUNTY JAIL, et al.,

      Defendants.                  FINDINGS AND RECOMMENDATIONS

_____/

      Plaintiff is a civil detainee proceeding without counsel in an action brought under 42 U.S.C. § 1983. This action proceeds against defendants Shasta County Board of Supervisors, Tom Bosenko, Don VanBuskirk, Sheila Ashmun, and Matt Mitchell ("defendants") on plaintiff's Fourteenth Amendment substantive due process claims. Defendants move for summary judgment on the grounds that no triable issues of material fact exist and that they are entitled to judgment as a matter of law. For the reasons stated below, the court recommends that defendants' motion be granted.

**I.    Background**

      Plaintiff is currently a civil detainee pursuant to California's Sexually Violent Predator Act ("SVPA"). *See* Am. Compl. ("Dckt. No. 14"); Defs.' Mot. for Summ. J. ("Defs. MSJ"), Decl. of Mitchell in Supp. Thereof ("Mitchell Decl."), Ex. 1 at 55 (Shasta County Superior Court

1

order, dated August 21, 2008, determining that plaintiff should be confined as a sexually violent predator to an appropriate facility for treatment for an indeterminate commitment).

A person is subject to commitment under the SVPA if he or she "has been convicted of a sexually violent offense against one or more victims and . . . has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1).

Plaintiff's claims arise out of events alleged to have occurred while he was confined to the Shasta County Jail, awaiting the SVPA civil commitment proceedings. Plaintiff claims that as a civil detainee, various aspects of his conditions of confinement were unconstitutionally punitive, in violation of his substantive due process rights. *See* Dckt. Nos. 14, 16. Plaintiff alleges that due to defendants' policies and procedures, he was subjected to an unreasonable strip search, had his legal and personal mail opened outside his presence, had his phone calls monitored, was denied access to the law library, and was denied specialized medical treatment and other rights. *See* Dckt. No. 14.[1] Plaintiff claims these policies and procedures were "designed to inflict harsher conditions on [him], a civil detainee, . . . than his criminal counterparts were required to endure, thereby making the custody in the Shasta County Jail punitive in application and effect." *Id.* at 3-4. Plaintiff seeks damages for the alleged violations. *Id.* at 9.

////

////

---

[1] In screening plaintiff's complaint for purposes of 28 U.S.C. § 1915(e)(2), the court found plaintiff had alleged cognizable substantive due process claims only. Dckt. No. 16. It did not find any cognizable procedural due process claims based upon defendants Ashmun and VanBuskirk's alleged handling of plaintiff's administrative appeals. *See* Dckt. No. 14 at 6-7 (identified as "Claim V" and "Claim VII"); *See also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Kindred v. Cal. Dep't of Mental Health*, Case No. 1:08-cv-01321-AWI-GSA, 2011 U.S. Dist. LEXIS 74908, at *16 (E.D. Cal. July 11, 2011) (recommending dismissal of civil detainee's claim based on defendant's alleged denial of administrative appeal).

## II. Undisputed Facts

Defendants submitted a Statement of Undisputed Facts in support of their motion for summary judgment. Defs.' MSJ, Stmt. of Undisputed Facts in Supp. Thereof ("SUF").[2] Plaintiff filed objections to defendants' Statement of Undisputed Facts, but contrary to Local Rule 260(b), he did not support any objection with "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon . . . ." E.D. Cal. Local Rule 260(b); *See* Pl.'s Opp'n to Defs.' MSJ ("Pl.'s Opp'n").  Nor did plaintiff otherwise submit or rely upon evidence to refute the evidence submitted by defendants. The court finds that the following facts are not disputed by either party or following the court's review of the evidence submitted, have been determined to be undisputed.

### A. Plaintiff's Arrival at the Shasta County Jail

On August 1, 2007, plaintiff was transferred from the Sacramento County Jail to the Shasta County Jail ("Jail"). Mitchell Decl. ¶ 2, Ex. 1 at 2-3. Plaintiff had been confined to the Sacramento County Jail because he was serving a criminal sentence for failing to register as a sex offender. *Id.* ¶ 6, Ex. 1 at 3, 30-33; Pl.'s Opp'n at 2, n.2. Plaintiff was transferred to the Shasta County Jail for two reasons: (1) to respond to a petition from the Shasta County District Attorney's office to commit him as a sexually violent predator; and (2) to respond to criminal charges pending against him in the Shasta County Superior Court. Mitchell Decl. ¶¶ 2, 6, 8, 9, Ex. 1 at 10, 43, 88-90. Plaintiff was held at the Shasta County Jail pursuant to the Sacramento County criminal conviction and the pending criminal charges in Shasta County, and was not being held solely as a civil detainee awaiting the SVPA civil commitment proceedings. *Id.* ¶ 10.

Jail programs and services are implemented by the Jail, not by the Shasta County Board of Supervisors. Defs.' MSJ, Decl. of Gary Brickwood in Supp. Thereof ("Brickwood Decl."),

---

[2] Because many of the statements in defendants' Statement of Undisputed Facts refer to the wrong paragraph of the Mitchell Declaration, the court will cite directly to the paragraph of the Mitchell Declaration that supports the relevant statement of undisputed fact, rather than to the statement of undisputed fact itself.

3

Ex. B.

### B. The Jail's Strip Search Policy

Jail policies provide for strip searches of inmates received from other institutions, inmates convicted of violent crimes, and inmates for whom a reasonable suspicion exists of carrying contraband or weapons. SUF 2. The Sheriff and subordinate officers responsible for making and enforcing the policy have determined there is a significant risk of contraband in the form of illegal drugs and weapons being brought into the facility by inmates transferred to the Jail from another jail or prison facility. Mitchell Decl. ¶ 5. The Jail has found that this circumstance is true as to both penal inmates and civil commitment inmates. *Id.* The Jail believes it is necessary for Jail security and safety to conduct a full body strip search, not including a cavity probe search, on every inmate who comes into the facility for permanent housing. *Id.*

When plaintiff arrived at the Shasta County Jail, staff were aware from jail records, that (1) plaintiff had been transferred with other penal inmates from the Sacramento County Jail, where he had been and was continuing to serve a criminal sentence, and (2) prior to that time, plaintiff had been a prison inmate within the California State Prison system for an undetermined number of years. SUF 3; Mitchell Decl. ¶¶ 6, 10, Ex. 1 at 3, 10, 30-33, 88-89. Upon plaintiff's arrival, Jail staff conducted a visual strip search of plaintiff, pursuant to the above described policy and practice, as plaintiff was a criminal detainee who was received from another penal institution prior to being placed into permanent Jail housing. SUF 4. The search was conducted in a private area of the Jail, by a male staff member. SUF 1; Mitchell Decl. ¶¶ 5-6.

### C. The Jail's Mail Policy

The policy and practice of the Jail during the time plaintiff was housed there was to open properly marked legal mail in the inmate's presence to assure Jail staff that no contraband in the form of drugs or weapons was present in the mail. Mitchell Decl. ¶ 12. Once staff was assured that there was no contraband, the mail was delivered to the inmate without Jail staff reading or

reviewing the contents of the mail. *Id.* The policy and practice of the Jail for non-legal mail was to open the mail outside the inmate's presence to ensure that the mail did not contain contraband. *Id.* ¶ 14. Jail staff would also quickly scan non-legal mail to ensure that the inmate was not planning a wrongful or dangerous action with the help of a person outside of the Jail. *Id.*

Shasta County Jail officials have determined that the above process regarding mail is necessary in order to provide for the safety and security of the Jail and to keep contraband out of the Jail. *Id.* ¶ 15. Jail officials have learned that even mail marked legal mail sometimes contains contraband. *Id.* Jail officials have also learned that the above is correct for both penal inmates and inmates identified as civil commitments under the Sexually Violent Predatory laws. *Id.*

Jail records indicate that on one occasion, plaintiff filed a grievance complaining that his legal mail was opened outside his presence. SUF 6; Mitchell Decl. ¶ 13. There was a question as to whether that particular envelope had been properly marked as legal mail. SUF 6; Mitchell Decl. ¶ 13. Jail staff apologized to plaintiff for the incident. SUF 6; Mitchell Decl. ¶ 13.

**D.     The Jail's Telephone Policy**

The Jail's policy and practice regarding phone calls is that non-legal outgoing phone calls by inmates are recorded by an automated and unmonitored system. Mitchell Decl. ¶ 16. The recordings are kept in a secure place, where only authorized jail staff can access them if needed because of an incident or suspicion relating to Jail security. *Id.*

As for attorney/client telephone calls, the Jail's policy and practice is the same as automated system described above. *Id.* ¶ 17. However, the system is programmed with the phone numbers of attorneys representing Jail inmates, and none of those phone calls get recorded. *Id.* Plaintiff's attorney's telephone number was part of the automated system such that any phone call between plaintiff and his attorney was not monitored. *Id.*

Plaintiff's legal phone calls at the Jail were not monitored or recorded. *Id.* ¶¶ 16, 17. Plaintiff did not make or receive any personal calls. SUF 10; Mitchell Dec. ¶ 16.

5

### E. The Jail's Mental Health Services

Plaintiff was offered mental health counseling services through psychiatrist Dr. Pia or family therapist Mary Barnes. SUF 11; Pl.'s Opp'n at 7. At the Jail, plaintiff wanted the same treatment that he had on the street before he was arrested, consisting on one on one and group therapy with a psychologist. SUF 12.

## III. Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and [ ] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushit*a, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine

issue for trial. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). *Id*. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element

7

of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

////

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. at 323. Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

On December 15, 2009, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**IV.     Individual and Municipal Liability Under 42 U.S.C. § 1983**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the alleged rights deprivation, as there is no respondeat superior liability under section 1983. *Jones*, 297 F.3d at 934. That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

Because respondeat superior liability is inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* To be held liable, "the supervisor need not be directly and personally involved in the same way as are the individual officers who are on the scene inflicting

9

constitutional injury." *Starr v. Baca*, __ F.3d __, 2011 U.S. App. LEXIS 15283, at *6 (9th Cir. 2011) (quotations omitted). Rather, the supervisor's participation and resulting liability could be based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others. *Id.* at *6, 13-4 (including acquiescence "in a deficient policy that was a moving force behind the harm caused to the plaintiff") (internal quotation omitted).

"Municipalities and other local government units. . .[are] among those persons to whom § 1983 applies." *Monell*, 436 U.S. at 690. However, a municipal entity or its departments, such as the Shasta County Board of Supervisors, is liable under § 1983 only if plaintiff shows that his constitutional injury was caused by employees acting pursuant to the municipality's policy or custom. *See Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (citing *Monell* 436 U.S. at 690-94). Federal claims against municipal defendants in their official capacities must also identify a government policy or practice, because an official capacity suit against a municipal defendant in his official capacity is nothing more than a suit against the county itself. *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n.2 (1997). Thus, in order for plaintiff to proceed on claims against municipal defendants, including his claims against Bosenko in his official capacity, plaintiff must show that their specific policies and practices were the moving forces behind the alleged violations of plaintiff's constitutional rights. *See Gibson v. County of Washoe*, 290 F.3d 1175, 1185-86, 1193-94 (9th Cir. 2002).

"[T]here are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Villegas*, 541 F.3d at 964 (internal quotations omitted).

////

## V. Substantive Due Process Under the Fourteenth Amendment

The applicable standard for conditions of confinement claims brought by detainees who have not been convicted of a crime is not the more restrictive deliberate indifference standard for cruel and unusual punishment under the Eighth Amendment, but rather, the "more protective" Fourteenth Amendment standard. *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004); *id.* at 933 (a civil detainee "retains greater liberty protections than his criminal counterpart.") (citing *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)).

Under this standard, "the nature and duration of commitment must bear some reasonable relation to the purpose for which the individual is committed." *Id.*; *see also Seling v. Young*, 531 U.S. 250 (2001) ("due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purposes for which persons are committed.").

"At a bare minimum" a civil detainee awaiting civil commitment proceedings "cannot be subjected to conditions that 'amount to punishment.'" *Jones*, 393 F.3d at 932 (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979)). Where a restriction is excessive in relation to its non-punitive purpose, or is intended to punish, it is "punitive." *Id.* at 933-34. Conditions are presumptively punitive if "the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment." *Id.* at 934.

## VI. Defendants' Motion for Summary Judgment

In their motion for summary judgment, defendants acknowledge that during most of the time plaintiff spent in the Jail, plaintiff was a civil detainee pursuant to a petition to have him committed as a sexually violent predator. Defs.' MSJ, Mem. of P. & A. in Supp. Thereof ("Defs.' P. & A.") at 2. However, defendants argue that plaintiff's strip search claim is premised on his mistaken belief that he was not a criminal detainee upon his arrival at the Jail. *Id.*

////

1  Defendants also contend that the strip search complied with due process requirements. *Id.* at 7-
2  10. Defendants argue that plaintiff's remaining claims are based on asserted rights as a civil
3  detainee that he simply did not have. *Id.* at 20-21. Defendants also contend that plaintiff asserts
4  no institutional policy through which defendants Bosenko or the Board of Supervisors violated
5  plaintiff's constitutional rights. *Id.* at 17-20.

6  Plaintiff's opposition consists largely of legal citations and argument and is not supported
7  by citations to evidence. As defendants note in their reply brief, portions of the opposition brief
8  appear to have been prepared for use by a different plaintiff in an entirely different lawsuit, as it
9  refers to a plaintiff named "William Jackson Kitchens" and to a defendant named "Transcor."
10 *See* Defs.' Reply to Pl.'s Opp'n ("Defs.' Reply") at 2, n.1 (referring to *Kitchens v. Mims*, Case
11 No. 05-cv-1567 DCB P). In *Kitchen*, the district court granted the defendants summary
12 judgment on claims that were similar to the claims raised in this action. *See Kitchens v. Mims*,
13 No. 05-cv-1567 DCB P, 2010 U.S. Dist. LEXIS 28279 (E.D. Cal., Mar. 25, 2010).

14 In their reply brief, defendants contend that plaintiff used his opposition solely as a
15 means to argue the merits of his case, but failed to produce any evidentiary objections or facts
16 creating a triable issue of fact. Defs.' Reply at 1. Defendants submit that plaintiff's opposition
17 is largely copied from an opposition prepared for use by a different plaintiff in another action
18 and that no effort has been made to apply the legal principles raised therein to the facts of his
19 case. *Id.* at 2 & n.1. In sum, defendants conclude that the opposition fails to present evidence or
20 argument to sustain a finding that a triable issue of fact remains, and request that the court grant
21 summary judgment as to the entire action. *Id.* at 1-3, 13.

22 **VII.   Discussion**

23     **A.    Strip Search**

24 Plaintiff claims that when he arrived at the Jail, "he was ordered to submit to a strip
25 search[ ] in the same manner as any other criminal detainee, after being transferred from one
26 secure facility to another and never being comingled [sic] with other inmates or outside of direct

1 custody, [or] supervision." Dckt. No. 14 at 5.  Plaintiff alleges the strip search violated his
2 substantive due process right to be free from punishment.

3       The Fourth Amendment right to be secure against unreasonable searches and seizures
4 extends to detainees who are sexually violent predators. *Hydrick v. Hunter*, 500 F.3d 978, 993
5 (9th Cir. 2007).  The test of "reasonableness" under the Fourth Amendment requires the court to
6 "consider the scope of the particular intrusion, the manner in which it is conducted, the
7 justification for initiating it, and the place in which it is conducted." *Bell*, 411 U.S. at 559.  It
8 also requires the court to consider whether the search was related to any legitimate penological
9 interests. *Byrd v. Maricopa County Sheriff's Dep't*, 565 F.3d 1205, 1221 (9th Cir. 2009) (citing
10 *Turner v. Safley*, 482 U.S. 78, 89 (1987) and *Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir.
11 Cal. 1997)).  "Legitimate, non-punitive government interests include ensuring a detainee's
12 presence at trial, maintaining jail security, and effective management of a detention facility."
13 *Jones*, 393 F.3d at 932.  In the context of a criminally sentenced detainee, a visual strip search
14 serves a legitimate penological purpose where the inmate was "presented with the opportunity to
15 obtain contraband or a weapon while outside of his cell." *Michenfelder v. Sumner*, 860 F.2d
16 328, 333 (9th Cir. 1988).

17       Plaintiff argues the strip search was unreasonable and/or punitive because of his claimed
18 status as a civil detainee. Pl.'s Opp'n at 2-3.  However, plaintiff does not refute defendants'
19 evidence that he was also a criminal detainee (based on the failure to register sentence), and a
20 pretrial criminal detainee (based on the pending criminal charges in Shasta County), when he
21 was searched.  *See* Pl.'s Opp'n at 2, n.2 (acknowledging he "was serving a term for failure to
22 maintain a current registration under [California] Penal Code § 290, as required").  Thus, even if
23 plaintiff was searched in a manner identical to, similar to, or more restrictive than other
24 criminally sentenced inmates, such a condition of confinement would not be "presumptively"
25 punitive. *See Jones*, 393 F.3d at 934.
26 ////

Plaintiff also argues, without citing to any evidence, that the strip search was unreasonable because (1) he was subjected to a similar search when he departed the Sacramento County Jail, (2) he was transferred to the Shasta County Jail in a secured vehicle under restraint with no access to the outside world, and (3) there is no evidence that plaintiff had ever attempted to smuggle contraband in the past. Pl.'s Opp'n at 2-4.

Plaintiff has failed to demonstrate a genuine issue of material fact regarding whether the strip search or the strip search policy was unconstitutional. Plaintiff does not refute defendants' evidence that: (1) plaintiff was transferred from the Sacramento County Jail; (2) jail records indicated plaintiff was currently serving a criminal sentence, had previously served criminal sentences for violent felony convictions, and faced pending criminal charges in Shasta County; (3) there is a significant risk that inmates transferred to the Jail from another facility will attempt to introduce illegal drugs or weapons; (4) that the Jail's strip search policy was meant to protect the legitimate safety and security interests of preventing the introduction of contraband into the Jail; and (5) that the visual search, which did not include a body cavity probe, was conducted in a private area by a male staff member.

Based on this unrefuted evidence, the court finds that the search was reasonable in terms of scope, manner, and place and that the Jail's concerns about plaintiff's ability to obtain contraband while transferred between institutions, was justified and related to a legitimate penological purpose. *See Fugate v. Philp*, Case No. 06-277 MMC, 2008 U.S. Dist. LEXIS 63989, at *17-21 (N.D. Cal. Aug. 21, 2008) (finding civil detainee's argument that "he had come from a secure facility where he had already been searched, and that he had been transported directly from that facility . . . while under constant supervision" failed to create a genuine issue of material fact as to whether a visual strip search violated his constitutional rights). As plaintiff raises no triable issue regarding the constitutionality of the strip search, or the Jail's strip search policy, the court finds defendants are entitled to summary judgment in their favor on this claim.
////

### B.     Mail

The Jail has a policy of opening legal mail in the inmate's presence to assure Jail staff that no contraband in the form of drugs or weapons was present in the mail. Plaintiff does not contend this policy is unconstitutional. Rather, he contends that on two occasions, Jail officials deviated from this policy and opened his legal mail outside his presence. *See also McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) ("A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee.").

As to the first occasion, defendants' submit undisputed evidence that the mail was opened by mistake because there was a question as to whether it actually was legal mail. Plaintiff offers no evidence related to the second alleged instance. Plaintiff also fails to challenge defendants' characterization of these incidents as isolated occurrences. *See* Defs.' P. & A. at 8-9; *see also Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) (where record could not establish anything beyond defendant's "mere negligence" in opening legal mail outside the inmate's presence, inmate's due process rights were not violated).

Here, the court finds there is no triable issue as to whether defendants' interference with plaintiff's mail was unconstitutionally punitive. *See Jones*, 393 F.3d at 932 (punitive conditions shown where the challenged actions are "expressly intended to punish," are "excessive in relation to [a non-punitive] purpose," or are employed to achieve objectives that could be accomplished by "alternative and less harsh methods.").

Plaintiff claims his rights were also violated by the Jail's policy regarding the inspection of non-legal mail. That policy was to open the mail outside the inmate's presence to ensure that the mail did not contain contraband, and to quickly scan the mail to ensure that the inmate was not planning any dangerous action. Jail officials have determined that this policy is necessary in order to provide for the safety and security of the Jail and to keep contraband out of the Jail, because even mail marked as legal mail sometimes contains contraband.

15

Plaintiff produces no evidence that this policy was ever applied to him.  Plaintiff also fails to establish he had a right to receive unopened personal mail, or that the Jail's policy in this regard did not advance a legitimate penological purpose or was otherwise unconstitutional.  *See United States v. Wilson*, 447 F.2d 1, 8 n. 4 (9th Cir.1971) ("prison officials may examine the communications of a prisoner without infringing upon his rights"); *Smith v. Boyd*, 945 F.2d 1041, 1043 (9th Cir. 1991) (upholding inspection of incoming mail); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (prison officials may scan non-privileged mail to detect possible escape plans, threats to jail security, or to inspect for contraband).

As there is no triable issue regarding the constitutionality of the Jail's policy regarding non-legal mail, the court finds defendants are entitled to summary judgment on this claim.  *See LaBlanc v. San Bernardino County Bd. of Supervisors*, Case No. 07-04361-TJH, 2010 U.S. Dist. LEXIS 138992, at *55-56 (C.D. Cal. Sept. 29, 2010) (granting defendants' motion for summary judgment on civil detainee's challenge to the inspection of his incoming non-legal mail because "prison officials may inspect non-legal mail for contraband without violating a prisoner's constitutional rights"), *adopted by* 2011 U.S. Dist. LEXIS 1238 (Jan. 5, 2011).

**C.     Telephone Calls**

Plaintiff claims the Jail monitored his phone calls.  However, it is undisputed that plaintiff did not make or receive any personal phone calls, and that calls with plaintiff's attorney were not monitored.

Defendants' evidence establishes the existence of a Jail policy whereby outgoing non-legal phone calls are recorded by an automated system and only accessed if a suspicion relating to Jail security arises.  The Jail's policy for attorney/client calls is to program the recording system with the inmate's attorney's phone number, which prevents any outgoing or incoming calls from that number from being recorded.  Plaintiff fails to offer any basis for concluding that these policies were not justified or otherwise unconstitutional  *See Bell,* 441 U.S. at 557 ("[G]iven the realities of institutional confinement," detainees retain "a diminished expectation

16

1  of privacy" at best); *Strandberg v. Helena*, 791 F.2d 744, 747 (9th Cir. 1986) (legitimate security
2  interests may limit inmates' right to telephone access).
3     Accordingly, the court finds defendants are entitled to summary judgment on this claim.
4  *See Jones v. Baca*, Case No. 07-08194-PA (VBK), 2010 U.S. Dist. LEXIS 143589, at *82 (C.D.
5  Cal. Mar. 31, 2010) (recommending defendants be granted summary judgment on civil
6  detainee's claim that phone calls were monitored because plaintiff "made only conclusory
7  allegations without any supporting evidence").

### D.  Law Library Access

Plaintiff also seeks to hold defendant Bosenko liable for allegedly being denied access to the law library to assist in his defense in the civil commitment proceedings.  Plaintiff does not allege or produce evidence that Bosenko personally denied plaintiff law library access, nor does plaintiff allege or prove the existence of an unconstitutional policy through which Bosenko could be held liable.  Defendants' motion for summary judgment should also be granted as to this claim.

### E.  Specialized Medical Treatment and Other Rights

Plaintiff claims he was denied protections to which he was entitled under California Welfare and Institutions Code § 5325.  Plaintiff also claims defendants "arbitrarily failed or refused to provide" plaintiff with "sex offender treatment," to which he was entitled under the SVPA and California Penal Code § 1610.  Dckt. No. 14 at 6-7.  Plaintiff alleges that defendant Ashmun informed plaintiff that plaintiff could submit a medical request for the services of Mary Barnes or Dr. Pai, because he did not have a "state determined course of treatment yet."  *Id.* at 7.

Defendants argue that plaintiff has not stated and cannot support any due process deprivation based on claims that his conditions of confinement violated these state laws.  Defs.' P. & A. at 10-14.  Indeed, a "violation of state law may not form the basis for a section 1983 action unless it causes a deprivation of a right protected by the Constitution."  *Shehee v. Baca*, Case No. 08-2277-FMC, 2009 U.S. Dist. LEXIS 99192, at *18, n.5 (C.D. Cal. Oct. 22, 2009).

17

Moreover, plaintiff fails to show he was entitled to any rights under California Welfare and Institutions Code § 5325 or to any sex offender treatment pursuant to California Penal Code § 1610.

> Section 5325 sets forth a list of specific rights that apply to:
>
> [e]ach person involuntarily detained for evaluation or treatment under [the Lanterman-Petris-Short Act], each person admitted as a voluntary patient for psychiatric evaluation or treatment to any health facility, as defined in Section 1250 of the Health and Safety Code, in which psychiatric evaluation or treatment is offered, and each mentally retarded person committed to a state hospital pursuant to [section 6500 et seq.].

As defendants argue, plaintiff fails to establish he was entitled to any rights under section 5325 because: (1) plaintiff was not "detained for evaluation or treatment" in a treatment "facility" as defined in the California Health and Safety Code § 1250," but rather, was detained in a jail, for a civil determination as to whether he was a sexually violent predator and thus subject to confinement in a treatment facility; and (2) plaintiff cites to no authority that entitles those subject to SVPA proceedings to the rights enumerated in section 5325. *See* Defs.' P. & A. at 10-14.

Nor has plaintiff shown he had any right to "sex offender treatment" under section 1610. Under Penal Code § 4002(b) and § 1610, persons who are subject to sexually violent predator proceedings and who are held in county detention facilities, shall "continue in his or her course of treatment" to the extent possible. Cal. Pen. Code § 4002(b); *see also People v. Ciancio*, 109 Cal. App. 4th 175, 196 (2003) (Penal Code sections 4002 and 1610 cannot reasonably be read to *mandate* pretrial treatment of alleged sexually violent predators, but entitles inmates to continued mental heath treatment where possible); *see id.* ("Penal Code section 1610 also contains no language mandating pretrial psychiatric treatment for alleged SVP's"). Defendants submit that plaintiff had no right to any particular mental health treatment because he was only an alleged sexually violent predator while detained in the Jail, and thus, there was no existing treatment with which he could "continue" at the Jail. Defs.' P. & A. at 15-17.

1    The court finds that plaintiff's claims are premised on rights to which he was not entitled,
2 and he cannot establish a violation of his due process rights. Accordingly, defendants' motion
3 for summary judgment should be granted as to these claims. *See Bagent v. Mims*, Case No. 1:06-
4 cv-01842 LJO-SMS, 2010 U.S. Dist. LEXIS 65769, at *11 (E.D. Cal. June 30, 2010), *adopted by*
5 2010 U.S. Dist. LEXIS 80980 (E.D. Cal. Aug. 11, 2010) (finding plaintiff had no right to, and
6 Fresno Count Jail defendants had no duty, to provide plaintiff with treatment under section 1610
7 while plaintiff was detained prior to commitment as a sexually violent predator); *Kitchens v.*
8 *Mims*, Case No. CV-0501567 DCB P, 2010 U.S. Dist. LEXIS 28279 (E.D. Cal. Mar. 25, 2010)
9 (rejecting plaintiff's due process argument based on lack of treatment pursuant to California
10 Penal Code sections 4402 and 1610, where plaintiff had not yet been adjudged a sexually violent
11 predator).

**F.     Board of Supervisors**

Plaintiff contends the Shasta County Board of Supervisors is liable for the alleged constitutional violations because it did not provide funding for programs and services to ensure that plaintiff's custody, care and treatment were constitutionally adequate. Dckt. No. 14 at 8; Pl.'s Opp'n at 8. However, it is undisputed that Jail programs and services are implemented by the Jail, not by the Board of Supervisors. And, as discussed above, plaintiff has not produced any evidence suggesting his constitutional rights were violated, much less raised a triable issue as to the Board's liability. Accordingly, the court finds defendants are entitled to summary judgment on this claim.

**VIII.  Recommendation**

The court finds there is triable issue of fact regarding whether defendants violated plaintiff's substantive due process rights and that defendants are therefore entitled to summary judgment.

////

////

19

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' November 19, 2010 motion for summary judgment be granted;

2. The Clerk be directed to enter judgment in defendants' favor; and

3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 1, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE